# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| FOOD & WATER WATCH, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | C.A. NO.: N17A-03-006 AML |
| | ) | |
| DELAWARE DEPARTMENT OF | ) | |
| NATURAL RESOURCES AND | ) | |
| ENVIRONMENTAL CONTROL, | ) | |
| | ) | |
| Appellee. | ) | |

Submitted: June 8, 2018
Decided: August 24, 2018

## MEMORANDUM OPINION

Kenneth T. Kristl, Esquire, of the ENVIRONMENTAL & NATURAL RESOURCES LAW CLINIC, WIDENER UNIVERSITY DELAWARE LAW SCHOOL, Wilmington, Delaware, Attorney for Appellant.

William J. Kassab, Esquire, of the STATE OF DELAWARE DEPARTMENT OF JUSTICE, Wilmington, Delaware, Attorney for Appellee.

**LeGrow, J.**

An environmental interest group appeals from an Environmental Appeals Board's (the "Board") decision finding the group lacked organizational standing to challenge an order issued jointly by the State's environmental and agricultural agencies. The order relieved poultry farms of the duty to monitor water on-site and in nearby streams for pollutants generated by those farms. The issues before the Court at this stage of the proceedings are whether an individual's loss of previously-enjoyed recreational and aesthetic enjoyment of an area affected by government action sufficiently establishes injury in fact, whether that loss of recreational and aesthetic enjoyment is traceable to the challenged order, and whether a favorable decision would redress the injury. Because I find such loss does establish injury in fact, is traceable to the challenged order, and likely would be redressed if the order was revoked, I find the interest group's individual members have standing and, by extension, the group as a whole has organizational standing.

## FACTUAL AND PROCEDURAL BACKGROUND

In November 2011, the Delaware Department of Natural Resources and Environmental Control ("DNREC") and the Delaware Department of Agriculture ("DDA") established a permit program for Concentrated Animal Feeding Operations ("CAFOs") in compliance with a national system. The program was designed to allow eligible poultry CAFOs to obtain a general permit ("General

Permit") after submitting a "Notice of Intent" and "Nutrient Management Program" to DNREC and DDA.

On October 28, 2015, DNREC published a draft for a revised General Permit. On March 30, 2016, the Secretary of DNREC and the Secretary of DDA jointly issued Order No. 2016-W-0008 (the "Order"), approving the General Permit's final draft. The General Permit establishes standards for CAFOs to operate in Delaware, but does not require CAFOs to monitor water on-site or in nearby streams for CAFO-generated pollutants. The lack of site-specific pollutant monitoring requirements in the General Permit raised the concerns of Kathlyn Phillips and Maria Payan, both of whom are members of Food & Water Watch ("F&WW").

According to affidavits submitted to the Board, the truth to which DNREC stipulated for purposes of resolving F&WW's standing, Phillips is a resident of Ocean City, Maryland. In the past, Phillips enjoyed recreating in the Indian River and other Delaware waterways by swimming, boating, kayaking, birdwatching and hiking. The General Permit's lack of pollutant monitoring requirements raised Phillips' concerns about unknown quantities of bacteria proliferating in Delaware's waterways. As a result of these concerns, Phillips is reluctant to continue her recreational activities and has ceased her activities in some areas altogether.

Payan is a resident of Selbyville, Delaware. Payan visited Delaware's beaches regularly, including Bethany State Park and Prime Hook State Park, and enjoyed swimming and eating crabs and fish she caught in those areas. Payan has observed that ditches leading away from CAFOs "frequently smell like animal waste and contain visible algae."[1] Due to the lack of monitoring requirements in the General Permit, Payan no longer intends to engage in her previous recreational activities at Delaware's beaches.

Patty Lovera is an Assistant Director of F&WW. She has held this position since 2005 and is "intimately familiar" with the organization's purpose.[2] Lovera describes F&WW as a non-profit, public interest consumer advocacy organization with the primary purpose of educating the public and advocating for policies that promote "environmental protection and the long-term well-being of communities."[3]

On April 25, 2016, F&WW filed an appeal with the Board, claiming the Order violated the Clean Water Act[4] by failing to mandate surface water discharge compliance monitoring mechanisms. F&WW argued the Order improperly was issued because DNREC failed to regulate pollutant discharge from the CAFOs. On

---

[1] Appellant's App. 78.
[2] Appellant App. 83.
[3] *Id.* at 84.
[4] 33 U.S.C. §§ 1251 *et seq.*

October 18, 2016, DNREC moved for summary judgment, arguing F&WW lacked standing to challenge the Order.

The Board heard arguments on DNREC's motion for summary judgment, and on March 1, 2017, the Board issued its decision finding F&WW lacked standing to appeal the Order. In its decision, the Board found that, under *Oceanport Industries, Inc. v. Wilmington Stevedores, Inc.*,[5] F&WW failed to establish the Order "substantially affected" F&WW's members. The Board found the F&WW members' fear that agricultural pollution "may cause harm" to their health was conjectural or hypothetical as opposed to concrete and particularized.[6] Additionally, the Board found F&WW failed to establish its members' injuries fairly were traceable to the Order because the alleged injuries could be caused by multiple sources of pollution as opposed to pollution exclusively caused by CAFOs. Finally, the Board found the alleged injuries, *i.e.*, curtailing recreational activities due to fear of pollution, were those shared by the public generally because other members of the public also may suffer those injuries.

## THE PARTIES' CONTENTIONS

On appeal, F&WW argues one or more of its members has standing to sue in their own right and F&WW therefore has organizational standing to challenge the Order. Particularly, F&WW contends its members have standing because damage

---

[5] 636 A.2d 892 (Del. 1994).
[6] Board Decision at 18.

4

to aesthetic or recreational interests constitute an injury in fact under the Delaware Supreme Court's decision in *Dover Historical Society v. Dover Planning Commission*.[7] F&WW contends the Board applied the wrong legal standard by requiring the members to show physical harm in order to demonstrate standing. F&WW also argues the Board ignored the stipulated facts by concluding Phillips and Payan had not suffered injury because they still enjoyed some recreational activities.

Additionally, F&WW asserts the Board erred by finding the injuries at issue were not traceable to the Order. The injury, F&WW maintains, is the individual affiant's decreased enjoyment and use of affected waterways due to the Order's lack of pollution monitoring requirements, and that injury, F&WW argues, fairly is traceable to the Order. Additionally, F&WW asserts the injury is redressable because a favorable decision from the Board would require CAFOs to resume pollution monitoring. Finally, F&WW contends it satisfies the other two requirements for organizational standing because the claim does not require the participation of its individual members and the suit is germane to F&WW's purpose.

In response, DNREC argues F&WW's members have failed to establish an injury in fact because the Order does not affect Phillips and Payan in a personal

---

[7] 838 A.2d 1103 (Del. 2003).

and individualized manner. DNREC contends Phillips' and Payan's recreational enjoyment is more akin to interests shared by the public at large as opposed to an individual interest. In its brief and at oral argument, DNREC suggested that under the Delaware Supreme Court's decision in *Dover Historical Society*, a plaintiff would need to own property in the affected area in order to establish injury in fact.

DNREC next argues that Phillips' and Payan's injuries are not traceable to the Order because their actual injury is pollution in Delaware's waterways, not lack of CAFO pollution monitoring.[8] DNREC contends this injury could not be redressed by a favorable decision from the Board because reimposing the monitoring requirements would not erase the other forms of pollution in Delaware's waterways. DNREC concedes that F&WW otherwise satisfies the requirements for organizational standing.

## ANALYSIS

An appellate court's review of a Board decision is limited. The Court merely determines whether the decision was supported by substantial evidence and free of legal error.[9] Upon review of an administrative agency's findings, the Court "will not substitute its judgment for that of an administrative body where there is substantial evidence to support the decision and subordinate findings of the

---

[8] By this argument, DNREC directly recharacterizes the injury alleged by Phillips and Payan.
[9] *Ward v. Dep't of Elections*, 2009 WL 2244413, at *1 (Del. July 22, 2009).

6

agency."[10] When reviewing the Board's conclusions of law, the Court's review is *de novo*.[11]

The Board held F&WW lacked organizational standing because it could not show its members would have standing to sue in their individual capacity. "An organization may sue on behalf of its members if 1) the interests to be protected by the suit are germane to the organization's purpose; and 2) neither the claim asserted nor the relief requested requires the participation of individual members; and 3) the organization's members would otherwise have standing."[12] Both before the Board and on this appeal, DNREC conceded the first two elements of this test.[13] Accordingly, F&WW's standing turns on whether F&WW's members individually could maintain this suit.

The Board found F&WW's members could not sue in their own right because they failed to show they substantially were affected by the Order. The Board concluded neither Phillips nor Payan demonstrated their alleged injuries were actual or imminent as opposed to conjectural or hypothetical. The Board also held the injuries were not fairly traceable to the Order because other pollutants may

---

[10] *Olney v. Cooch*, 425 A.2d 610, 613 (Del. 1981).
[11] *Ward*, 2009 WL 2244413, at *1.
[12] *Oceanport Indust., Inc. v. Wilm. Stevedores, Inc.*, 636 A.2d 892, 902 (Del. 1994).
[13] Appellee's Answer Br. 18.

7

contaminate the affected waters. Finally, the Board concluded the members' recreational injuries are more like those suffered by the public generally.[14]

In order to determine an individual's standing to challenge an administrative decision, the Court must look to the statutory language that confers a party's right to appeal that decision.[15] Title 7, Section 6008(a) of the Delaware Code provides "[a]ny person whose interest is substantially affected by any action of the Secretary may appeal to the Environmental Appeals Board within 20 days after receipt of the Secretary's decision or publication of the decision."[16] In *Oceanport Industries*, the Delaware Supreme Court held Section 6008(a)'s "substantially affected" requirement can be established by applying the three-pronged *Data Processing* Test,[17] which initially was formulated in *Association of Data Processing Service Organizations, Inc. v. Camp*.[18] First, the party must have suffered an injury in fact.[19] In other words, the injury must be concrete and particularized, not conjectural or hypothetical. Second, the injury must be fairly traceable to the challenged action of the defendant. Third, "it must be likely that the injury will be redressed by a favorable decision, rather than merely speculative."[20]

---

[14] The Board did not address whether the injuries were redressable.
[15] *Id.* at 900.
[16] 7 *Del. C.* § 6008(a).
[17] *Oceanport Indust., Inc.*, 636 A.2d at 903.
[18] 397 U.S. 150 (1970).
[19] *Id.* at 904.
[20] *Id.*

## A. Phillips and Payan suffered an injury in fact.

The Delaware Supreme Court addressed the requirements for establishing injury in fact in *Dover Historical Society v. Dover Planning Commission.*[21] In *Dover Historical Society*, the Supreme Court held "[i]n order to achieve standing, the plaintiff's interest in the controversy must be distinguished from the interest shared by other members of a class or the public in general."[22] In that case, the petitioners, which included an historical organization, residents who owned property within the Historic District of Dover, and property owners within the larger city of Dover, challenged the Dover Planning Commission's decision granting a permit to build a new structure in Dover's historic district.[23]

The Supreme Court held the group of petitioners who owned property within the historic district had standing because "injuries asserted by owners of land in the Historic District of Dover do not arise from a 'common concern for obedience to the law' but from individual concerns about the integrity and cohesiveness of historical sites in their own backyard."[24] Conversely, the Court denied standing to the group of petitioners who owned property in the greater city of Dover because "the remaining petitioners had not alleged facts that demonstrated they have an interest that is distinguishable from the public at large *or* that they will realize a

---

[21] 838 A.2d 1103 (Del. 2003).
[22] *Id.* at 1116 (quoting *Stuart Kingston, Inc. v. Robinson,* 596 A.2d 1378, 1382 (Del. 1991)).
[23] *Id.* at 1105-06.
[24] *Id.* at 1114 (quoting *Pye v. U.S.,* 269 F.3d 459, 469 (4th Cir. 2001)).

direct harm from the decision of the Planning Commission."[25]  In other words, under the *Dover Historical Society* decision, a petitioner whose standing is challenged must demonstrate they have an interest distinguishable from the public at large or that they will realize a direct harm from the challenged government action.

The ability to demonstrate an interest distinct from the public or a direct harm resulting from government action depends on the context of the interest at stake.  In the context of challenging the decision of a planning commission, such as the one in *Dover Historical Society*,[26] some sort of property interest arguably is required to set the petitioner's interest apart from the public at large.[27]  Contrary, however, to DNREC's arguments in this case, the *Dover Historical Society* Court did not hold that a property interest is required to establish injury in fact in every context.

By taking *Dover Historical Society* out of its context and according it an unreasonable interpretation, DNREC effectively argues there is no standard by

---

[25] *Id.* at 1116 (emphasis added).

[26] *See also Harvey v. Zoning Bd. of Adjustment of Odessa*, 2000 WL 33111028 (Del. Super. Nov. 27, 2000), *Healy v. Bd. of Adjustment of the City of New Castle*, 2003 WL 21500330 (Del. Super. June 20, 2003), *Society Hill Towers Owners Ass'n v. Rendell*, 210 F.3rd 168 (3d Cir. 2000).

[27] Even that argument is inconsistent with the *Dover Historical Society* Court's opinion.  While denying standing on the existing record to plaintiffs who did not own property within the historic district, the Court remanded the case and allowed those plaintiffs ten days to file an amended petition in the Superior Court alleging a concrete and particularized injury.  838 A.2d at 1116.

10

which a non-property owner may show injury in fact under Section 6008(a).[28]
DNREC compares Phillips and Payan to the non-property owners in *Dover
Historical Society*, suggesting a party must establish a particularized harm through
loss of property value in order to show standing.[29] DNREC's property interest
argument fails to recognize the myriad injuries unrelated to property value that
potentially are at issue in an environmental claim, including harm to livestock,
contaminated water supplies, and decreased recreational activities of active
individuals.

A more reasonable view of standing in the context of an environmental
claim, and one endorsed by the Delaware Supreme Court, is the one expounded in
the United States Supreme Court's decision in *Sierra Club v. Morton*.[30] There, the
Supreme Court held that a party seeking review must show "that the alleged injury
[actually affects] the plaintiff in a personal and individual manner . . . ."[31] The
effect on the plaintiff, however, need not be a property, economic, or tangible
interest. Rather, "[i]njury due to loss of benefits that might be derived from natural
resources such as camping, hiking, fishing, sightseeing and the like is similarly of

---

[28] Appellee's Answer Br. 19-24.
[29] *Id.* at 23 (citing *Dover Historical Soc.*, 838 A.2d at 1114).
[30] 405 U.S. 727 (1972).
[31] *Oceanport Indust., Inc. v. Wilm. Stevedores, Inc.*, 636 A.2d 892 (1994).

11

an intangible character and yet potential injury to such interests was found . . . to be enough to support standing."[32]

The United States Supreme Court's decision in *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*,[33] further elucidated the parameters to standing based on an alleged environmental injury. In *Friends of the Earth*, the Court held that "environmental plaintiffs adequately allege injury in fact when they aver that they use the affected area and are persons 'for whom the aesthetic and recreational values of the area will be lessened' by the challenged activity."[34] In *Friends of the Earth*, an environmental group brought an action against the operator of a wastewater treatment plant, claiming the plant repeatedly discharged mercury in the Tyger River in excess of the limits under its permit.[35] In support of its standing argument, the group submitted several affidavits from its members. The affidavits detailed how members of the group previously swam, camped, picnicked, waded, birdwatched, hiked, and canoed on the river, but no longer would do so because of feared mercury contamination. The Court held these affidavits asserted that the mercury discharges "directly affected th[e] affiants'

---

[32] *Harvey v. Zoning Bd. of Adjustment of Odessa*, 2000 WL 33111028, at *7 (Del. Super. Nov. 27, 2001) (quoting *Save the Courthouse Committee v. Lynn*, 408 F.Supp. 1323, 1332 (S.D.N.Y. 1975)).
[33] 528 U.S. 167 (2000).
[34] *Id.* at 183 (quoting *Sierra Club v. Morton*, 405 U.S. 727, 735 (1972)).
[35] *Id.* at 167.

recreational [and] aesthetic[] interests . . . ."[36]  The Court found the affidavits "present[ed] dispositively more than . . . mere 'general averments' and 'conclusory allegations . . . .'"[37]

The Delaware Supreme Court cited the *Friends of the Earth* framework in *Dover Historical Society*, noting "aesthetic injuries can constitute an injury in fact that is sufficient to support a plaintiff's standing."[38]  Environmental plaintiffs therefore may establish injury in fact "when they aver that they use the affected area and are persons 'for whom the aesthetic and recreational values of the area will be lessened' by the challenged activity."[39]

Phillips' and Payan's affidavits meet that standard.  In her affidavit, Phillips averred that she previously enjoyed swimming, boating, kayaking, birdwatching, and hiking in the Indian River and other Delaware waterways.  Phillips stated that fear of contamination due to lack of CAFO discharge monitoring has decreased her enjoyment of these activities and she has decided to avoid recreating in certain areas altogether.

Similarly, Payan's affidavit noted how she used to enjoy visiting Bethany State Park and Prime Hook State Park, which are near her residence, as well as

---

[36] *Id.* at 184.
[37] *Id.*
[38] *Dover Historical Soc. v. Dover Planning Comm'n*, 838 A.2d 1103, 1113 n.42 (Del. 2003) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Serv. (TOC), Inc.*, 528 U.S. 167, 183 (2000)).
[39] *Friends of the Earth*, 528 U.S. at 183 (quoting *Sierra Club v. Morton*, 405 U.S. 727, 735 (1972)).

13

swimming and eating crabs and fish that she caught in the area. Payan averred that due to the Order's lack of monitoring requirements, she no longer intends to swim or fish in these state parks for fear of CAFO-generated pollutants. Phillips and Payan therefore have established injury in fact because their aesthetic and recreational enjoyment of the affected areas has been lessened by the General Permit's lack of monitoring requirements. These injuries are distinct from injuries suffered by the public at large because the threat of water pollution has affected their activities in an individual and personal manner.

The Board's conclusion that Phillips' and Payan's injuries were conjectural and hypothetical misapplied Delaware law. The Board noted Phillips has not ceased her recreational activities entirely and held that Payan's injury was hypothetical because Payan was concerned that the pollution "may cause harm to her health." The Board missed the mark on both points. First, although Phillips has not ceased all her recreational activities, her injuries were actual because her activities have diminished and her enjoyment of affected areas is lessened. Under *Friends of the Earth*, an environmental plaintiff does not need to exhaust all possible outlets for recreational activity before she may challenge the government action.[40] Second, Payan's injuries are not the potential harm to her health, but rather the actual injury of lessened recreational and aesthetic enjoyment of the

---

[40] *Id.*

14

affected areas. Under *Friends of the Earth* and *Dover Historical Society*, that lessened recreational activity is not hypothetical or conjectural. In denying Phillips and Payan standing, the Board applied an impermissibly high standard inconsistent with *Friends of the Earth* and *Dover Historical Society*.

### B. Phillips' and Payan's injuries fairly are traceable to the General Permit and may be redressed by a favorable decision.

Phillips' and Payan's recreational and aesthetic injuries are traceable to the lack of pollution monitoring in the General Permit's provisions. Both the Phillips and Payan affidavits expressed concern that their health negatively will be affected by bacterial pollution while they recreate and fish in Delaware waterways and the absence of site-specific CAFO-generated pollutant monitoring makes it impossible to pinpoint affected areas. As a result of the lack of information regarding the contamination of the affected waters, Phillips and Payan allege they are injured because they have reduced or ceased their recreational activities.

In its decision, the Board found that F&WW failed to show Phillips' and Payan's injuries fairly were traceable to the General Permit because they presented no evidence that the CAFOs have polluted the state waterways. The Board concluded that because "it is recognized" that there are many forms of pollution in Delaware's waters, F&WW would need to present evidence that the pollution was

15

caused by CAFOs directly.[41] The Board went so far as to question the sincerity of Phillips' and Payan's affidavits, suggesting their fear of water pollution actually stemmed from alternate sources of pollution as opposed to CAFO-generated pollution.[42] By considering other sources of pollution and discounting the affidavits, the Board improperly weighed the merits of the case, introduced new facts not in the record, and drew inferences that were not appropriate at this stage of the proceedings and that contradicted DNREC's stipulation to the truth of the affidavits.

First, it was improper for the Board to consider whether alternate forms of pollution could have been the source of Phillips' and Payan's injuries. As noted above, the injury at issue is not injury to the members' health, but rather loss in recreational and aesthetic value due to lack of information about site-specific

---

[41] Board Decision at 19.

[42] *Compare* Board Decision at 19 ("The members' fears of water pollution may have caused them to curtail their recreational activities, but such fears did not stem from a direct correlation between water pollution caused by CAFOs and water pollution caused by some third party."), *with* Appellant's App. 72-73 ("My concerns about Delaware's CAFO pollution are also affecting my recreational activities. My knowledge and awareness of the various types of pollution in these waterways, including fecal coliform and nutrient pollution from poultry CAFOs, make it much less enjoyable for me when I . . . personally recreate on rivers like the Pocomoke and elsewhere in the Coastal Bays watershed. . . . Because the ocean cannot flush contaminants from the Delaware Inland Bays as easily as the Atlantic Coastal Bays, I am now reluctant to recreate in them *for fear of CAFO pollution* and intend to avoid certain areas in the future *that I would have continued to recreate in if not for my concerns about CAFO industry pollution*.") (emphasis added), *and* Appellant's App. 80 ("Until recently, I would regularly swim in the ocean, crab off of the docks, fish, and eat the crabs and fish I caught. Bethany State Park is only about twenty minutes from my house, and I am also close to Prime Hook State Park, and I would visit them often if I felt it was safe. *But because of my knowledge of CAFO water pollution and the threats it poses to public health*, I will no longer swim in these beaches or eat locally caught fish or crabs.") (emphasis added).

CAFO pollution. By speculating that the water is polluted by additional sources, the Board improperly weighed the merits of the case and mischaracterized the members' injuries.

Second, by "recognizing" additional sources of pollution, the Board improperly alluded to alleged facts not contained in the record. The Board's decision denied F&WW's standing on DNREC's motion for summary judgment, and the Board therefore was required to draw all reasonable inferences in F&WW's favor and accept the averments that the members' injuries stemmed from a lack of information on CAFO pollution caused by the General Permit's new provisions. Moreover, DNREC stipulated to the averments in those affidavits and agreed to accept their truth for purposes of determining F&WW's standing.

Finally, Phillips' and Payan's injuries could be redressed by a favorable decision from the Board. Were F&WW to succeed on the merits, the Order would be reversed, and the CAFOs would be required to monitor the water on-site and in nearby streams for CAFO-generated pollutants. Information from the results of the CAFOs' monitoring would be available to F&WW and its members, allowing the members to resume their recreational activities without fear of pollution at particular sites due to lack of monitoring. In sum, Phillips and Payan suffered injuries in fact that fairly are traceable to the Order and are capable of redress by a favorable decision of the Board. Accordingly, F&WW's members have standing

to sue in their own right and F&WW therefore satisfies all three requirements for organizational standing.

## CONCLUSION

For the foregoing reasons, the Environmental Appeals Board's decision is **REVERSED** and **REMANDED. IT IS SO ORDERED.**