IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE

IN AND FOR KENT COUNTY

DOVER EAST ESTATES    )
           )
  Appellant/ Plaintiff-Below, )
           )
  v.         )  C.A. No.: CPU5-12-000983
           )
GREEN TREE SERVICING, LLC, )
           )
  Appellee/ Defendant-Below. )
           )

Michael P. Morton, Esquire
Michael P. Morton, P.A.
1203 North Orange Street
Wilmington, DE 19801
Attorney for Appellant/ Plaintiff-Below

Dean A. Campbell, Esquire
Law Office of Dean A. Campbell, LLC
401 North Bedford Street
Georgetown, DE 19947
Attorney for the Appellee/ Defendant-Below

Trial: June 13, 2014
Decided: July 29, 2014

**DECISION AFTER TRIAL**

The instant case involves a dispute between a landlord of a manufactured housing community and a lien holder. Plaintiff Below/ Appellant, Dover East Estates ("Dover East"), filed a civil appeal against Defendant Below/ Appellee, Green Tree Servicing, LLC ("Green Tree"), with this Court for a trial *de novo* from a final order of the Justice of the Peace Court.

Dover East contends Green Tree is liable for storage and late fees due to Green Tree's lien holder status on an abandoned manufactured home on one of Dover East's lots. Dover East maintains it is entitled to $13,248.68 in storage fees and $750.00 in vacant building fees. Green Tree contends it is not liable to Dover East because it never possessed the manufactured home. Following trial on this matter, the Court enters judgment for Green Tree.

## FACTS

Edward Sparacio owned a manufactured home ("home") situated on a lot he rented in Dover East's manufactured housing community. Green Tree held a lien on Mr. Sparacio's home, perfected on January 22, 1999. At all times, title to the manufactured home was in Mr. Sparacio's name. Sometime during November of 2011, Mr. Sparacio abandoned the manufactured home and stopped paying his lease with Dover East.

On January 13, 2012, Dover East sent Green Tree a letter demanding payment for storage of the home and late fees in the amount of $1,660.96. Dover East requested Green Tree to contact it about Green Tree's plans for the home. Dover East's letter indicated that a representative from Green Tree had been out to the home to inquire about Mr. Sparacio's nonpayment on his mortgage.

On January 25, 2012, the Justice of the Peace Court awarded Dover East summary possession of the home in an action against Mr. Sparacio. On February 14, 2012, Dover East sent Green Tree a second notice demanding payment in the amount of $1,660.96 for storage and late fees associated with the home. On February 17, 2012, a writ of possession was executed against Mr. Sparacio, awarding possession of the home to Dover East.

On March 7, 2012, Dover East sent Green Tree a third letter demanding $2,076.20 for storage and late fees associated with the home. On March 29, 2012, Dover East sent Green Tree

2

a fourth letter, again demanding $2,076.20 for storage and late fees. The letter indicated that if Dover East was not paid, it would seek to destroy the home and hold Green Tree accountable for the costs of removal. This demand letter also stated that a representative from Green Tree had placed a Green Tree Financing sale sign with a "repo number" and Green Tree's phone number in a window of the home. Dover East testified that no one from Green Tree ever contacted it to request access to the home and that it directed individuals who inquired about the home to Green Tree. The sale sign appeared in the window of the home for a period of three to four months; however, Dover East could not conclusively establish a timeline as to when the sign first appeared. Green Tree did not respond to any of Dover East's demand letters or calls.

On May 1, 2012, Dover East initiated an action against Green Tree in the Justice of the Peace Court. Originally filed as a summary possession suit, the claim was later amended as a debt action.

On June 15, 2012, Green Tree released its lien on the home at the Department of Motor Vehicles.

On May 6, 2014, in response to a letter from the City of Dover, Dover East sent a check for $500 to the Department of Planning and Inspections to register the home as a vacant building. Dover East acknowledged at trial that it maintained the lot and boarded the home to prevent trespassers. On June 10, 2014, Dover East also sent the Department of Planning and Inspections $45 to renew the home's mobile home license.

Dover East contends that it was not equitable for Green Tree to ignore Dover East's inquiries about the home and that it has a right to the accruing storage fees, late fees and vacant building fees. Dover East contends that landlords are not precluded from suing lien holders of manufactured homes as a result of the legislature's repeal of the Mobile Home Lots and Leases

3

Act ("MHLLA"), and its language forbidding such a suit, and the enactment of the Manufactured Homes and Manufactured Home Communities Act ("MHMHCA"), which does not contain any language with such a prohibition. Green Tree contends that the legislature's replacement of the MHLLA does not give Dover East a right to a claim against them. Green Tree contends that pursuant to the Justice of the Peace Court's order and title 25, section 5715 of the Delaware Code, Dover East received full possession of the home when it executed the writ of possession. Green Tree further argues that because Dover East has full possession, Dover East could have demolished the home and mitigated its damages. Finally, Green Tree contends it is not liable for the storage fees of the home.

## DISCUSSION

### I. Standing

The burden of proof is on Dover East to establish standing. *See Dover Historical Soc. v. City of Dover Planning Comm'n*, 838 A.2d 1103, 1109 (Del. 2003). Dover East alleges that as a lien holder on the abandoned mobile home, Green Tree owes Dover East storage and late fees. During trial, Dover East argued that the MHLLA protected lien holders from responsibility for liabilities incurred by a tenant. Dover East argued that when the MHLLA was replaced by the MHMHCA, the legislature omitted this protection for lien holders. Therefore, the legislature must have intended that lien holders should be held liable for abandoned mobile homes on which they hold a lien.

The MHLLA was effective until August 25, 2003 when the Delaware legislature replaced it with the MHMHCA. The portion of the MHLLA relied on by Dover East states:

> No party other than the lessee, sublessee or the estate of a deceased lessee or sublessee of a mobile home lot shall be responsible to the landlord for payment of rent under the terms of any rental agreement, and the landlord shall not be entitled to remittance on the part of any seller of or mortgagee of a mobile home for rents not paid by the tenant and not

4

collectable from the tenant due to his permanently vacating his mobile home without notice to the landlord or mortgagee and leaving no forwarding address.

DEL. CODE ANN. tit. 25 § 7014(3) (2002).

In 2003, the Delaware legislature repealed the MHLLA and replaced it with the current MHMHCA. The protections afforded lien holders are not included in the MHMHCA; however, there also is not any language in the MHMHCA transferring liability of the tenant to the tenant's lien holders. *See Greentree Fin. Serv., LLC v. Glascow Court Enter., LLC*, C.A. No. CPU4-10-00625 1, at 15-16 (Del. Com. Pl. Sept. 13, 2012) (holding that the legislature intended to permit landlord claims against lien holders when it replaced the MHLLA with the MHMHCA and excluded the provision that precluded these claims). Therefore, the Court concludes that Dover East has standing to proceed; however, this standing does not automatically guarantee that Dover East has a successful cause of action.

## II. Possession

Dover East bears the burden of proof, by a preponderance of the evidence, that it is entitled to the storage and late fees and reimbursement for the vacant building fees associated with the home. *See Hufnal v. Harding*, 2012 WL 1079923, at *1 (Del. Com. Pl. Mar. 16, 2012). The main issue in this regard is whether Green Tree took possession of the home.

### a. Green Tree's Possession of the home

A security interest merely grants a lien holder the *right* to take possession of collateral after a debtor's default. According to the Delaware Code, "after default, a secured party *may* take possession of the collateral . . . ." DEL. CODE ANN. tit 6, § 9-609 (emphasis added). "After default, a secured party *may* sell, lease, license, or otherwise dispose of any or all of the collateral in its present condition or following any commercially reasonable preparation or processing." DEL. CODE ANN. tit 6, § 9-610 (emphasis added). The Delaware Code

5

explicitly "rejects theories on which a secured party might be held liable on a debtor's contracts or in tort merely because a security interest exists. . . ." DEL. CODE ANN. tit 6, 9-402 cmt. 2. "The existence of a security interest . . . without more, does not subject a secured party to liability in contract, tort or otherwise for the debtor's acts or omissions." DEL. CODE ANN. tit 6, § 9-402.

In this case, Green Tree's security interest in the home is not equated with possession of the home. Pursuant to §§ 9-609 and 9-610, Green Tree had the right, not the obligation, to take possession of the home upon the tenant's default on his obligation with Green Tree. Furthermore, the title to the home remained at all times in the tenant's name. Green Tree's name was merely recorded on the title as the first lien holder on the home. Green Tree's security interest only gave it the right to take possession of the mobile home upon the default of the tenant on his obligation to it. It was not required to do so.

While the existence of a security interest alone is not enough to subject a lien holder to liability on its collateral, repossession of that collateral does subject a lien holder to liability. In *Greentree Fin. Serv., LLC v. Glascow Court Enter., LLC*, the Court found that a lien holder was liable to the landlord of a mobile home park for storage and late fees associated with two mobile homes because the lien holder repossessed the mobile homes pursuant to its security interest. C.A. No. CPU4-10-00625, at 6, 23 (Del. Com. Pl. Sept. 13, 2012) ("*Glascow*"). The Court found that the lien holder was liable to the landlord not because of its security interest, but due to its actions. *Id.* Not only did the lien holder acknowledge possession of the homes and its liability for the debts incurred, but the lien holder also possessed the keys to the homes and marketed and sold the homes. *Id.* The Court considered the lien holder's marketing of the

6

homes and promise to pay for the storage fees as significant factors in determining that the lien holder had possession of the homes. *Id.* at 5, 23.

The Court finds that the specific actions showing possession in *Glascow* are not present in the present case. Unlike *Glascow,* where there was evidence that the lien holder induced the landlord with promises that the lien holder would pay storage fees on the home, the parties in this case stipulated that there was no verbal or written communication between Green Tree and Dover East of a promise to pay or acceptance of liability. Dover East claimed that it saw a Green Tree representative on the lot; however, Green Tree's mere presence on the lot is not alone sufficient to show possession. Dover East claimed that there was a sale sign in the window of the home for approximately three to four months; however, it failed to give the Court any tangible proof of the sign or more information regarding when it appeared and if it was removed.[1] There is little to no evidence that Green Tree attempted to possess or act as an owner of the mobile home. Green Tree did not respond to Dover East's phone calls or demand letters, including the demand letter which stated that Dover East would seek to destroy the home and hold Green Tree accountable for the costs of removal. This lack of response shows that Green Tree did not intend to take possession of the home. Furthermore, the title to the home was in the name of the tenant, not Green Tree. Upon default by the tenant on the loan, title remained in the tenant's name. As a result, the Court concludes that there are not sufficient facts on the record to show that Green Tree possessed the mobile home.

---

[1] Furthermore, Dover East provided documentation showing that it paid the City of Dover to register the home as a vacant building and renew the mobile home license. Dover East also boarded up the home and maintained the lot. While these actions are not pertinent to this discussion, it would be significant in showing Green Tree's possession had they been performed by Green Tree.

### b. *Dover East's possession of the home*

Title 25, section 5715 provides the procedural requirements and authority of a landlord executing a writ of possession on a manufactured home. Section 5715 states:

> 24 hours after the posting of the writ [on the home by the sheriff], the home may be removed from the lot by the landlord. . . . [A]fter removal, the home must be stored at the tenant's expense for a period of 30 days before it can be disposed of through further legal action.
>
> . . . .
>
> If, at the end of such [30 day] period, the tenant has failed to claim said property and to reimburse the landlord for the expense of removal and storage in a reasonable amount, such property and possessions shall be deemed abandoned and may be disposed of by the landlord without further notice or obligation to the tenant. Nothing in this subsection shall be construed to prevent the landlord from suing for both rent and possession at the same hearing.

DEL. CODE ANN. tit. 25, § 5715(b), (e).

In the present case, Dover East executed its writ of possession on the home on February 17, 2012. On February, 18, 2012, twenty-four hours after the writ was executed, Dover East had the authority to leave the home on the lot for a period of thirty days or remove the home from the lot and store it elsewhere for a period of thirty days. On March 19, 2012, thirty days after February 18, 2012, the home was deemed abandoned pursuant to the law; therefore, as of that date, the home was considered to be the possession of Dover East and subject to disposal at its own expense. Dover East chose to leave the home on its lot after it executed the writ of possession. Regardless of where Dover East chose to store the home, thirty days after the writ was executed, the home became the possession of Dover East.[2]

---

[2] Assuming *arguendo* that the Court concluded that there was sufficient evidence on the record to show that Green Tree had repossessed the home, the only period during which Green Tree would be liable to Dover East would be for the thirty day storage period from February 18, 2012, through March 19, 2012. Regardless of whether Dover East presented sufficient information showing that Green Tree possessed the home; Dover East had possession of the lot and the home thirty days after execution of the writ of possession was finalized.

As a result, the Court concludes that Dover East has failed to prove by a preponderance of the evidence that Green Tree possessed the mobile home.

## CONCLUSION

As a result of the Court's finding of fact, which is based upon the entire record, including all direct and circumstantial evidence, and all references resulting therefrom, and the Court's above-referenced conclusions of law, the Court enters judgment for the Defendant Below/ Appellee, Green Tree Servicing, LLC, and against the Plaintiff Below/ Appellant, Dover East Estates.

**IT IS SO ORDERED this 29th day of JULY, 2014.**

CHARLES W. WELCH
JUDGE

9