## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

RACE TRACK CAR WASH, LLC     :
    :
    :     C.A. No. K19A-04-004 JJC
    :     In and For Kent County
Petitioner,     :
    :
v.     :
    :
CITY OF DOVER PLANNING     :
COMMISSION, the CITY OF     :
DOVER, BLUESKY DOVER     :
PROPERTIES, LLC, and     :
KATHLEEN J. GRAY,     :
    :
Respondents.     :

## OPINION & ORDER

Submitted:  August 7, 2019
Decided: September 5, 2019

Shawn P. Tucker, Esquire & Sawyer M. Traver, Esquire, DRINKER BIDDLE & REATH, LLP, Wilmington, Delaware, *for the Petitioner Race Track Car Wash, LLC*.

William W. Pepper, Sr., Esquire, SCHMITTINGER & RODRIGUEZ, P.A., Dover, Delaware, *for the Respondents City of Dover Planning Commission and City of Dover.*

John W. Paradee, Esquire, Daniel F. McAllister, Esquire, Stephen A. Spence, Esquire & Brian V. DeMott, Esquire, BAIRD MANDALAS BROCKSTEDT, LLC, Dover, Delaware, *for the Respondents Bluesky Dover Properties, LLC & Kathleen J. Gray.*

Clark, J.

Petitioner Race Track Car Wash, LLC., ("Race Track") petitions for a writ of *certiorari* seeking reversal of a decision of the City of Dover Planning Commission ("DPC" or "Commission"). Earlier this year, the DPC approved a site plan to place a car wash at the site of the former Kirby and Holloway Restaurant (the "Site"). Race Track alleges that the DPC violated City ordinances and State law when approving the plan. The Site falls, in part, within a Tier 3: Excellent Recharge Area in a Source Water Protection Overlay Zone (the "Zone"). Race Track alleges that a City ordinance prohibits a car wash in that Zone. A separate ordinance imposes a thirty-foot buffer from U.S. Route 13 (the "arterial street buffer") upon the Site. Race Track also challenges the DPC's partial waiver of that requirement.

Respondents DPC, City of Dover, Bluesky Dover Properties, LLC, and Kathleen Gray (collectively "Bluesky") counter that Race Track, as a business competitor, has no standing to challenge the DPC's approval. Furthermore, if Race Track does have standing, Bluesky argues that the DPC committed no error of law that would justify reversal or remand.

For the reasons discussed below, Race Track has not demonstrated its standing to challenge the DPC's decision finding the proposed car wash to be a permitted use in the Zone. Race Track also does not demonstrate standing to challenge the DPC's partial waiver of the arterial buffer requirement. As a result, its petition for *certiorari* must be **DISMISSED** at this stage of the proceedings.

## I.    The Record and Procedural History

The facts of record relevant to the petition come from two sources: the certified record of the DPC proceedings, and the documents Race Track now proffers to demonstrate its standing. The Site falls within City limits, and abuts U.S. Route 13. Kathleen Gray contracted to sell the approximately one-acre Site to Bluesky Dover Properties LLC, which is now the Site's equitable owner.

2

On February 6, 2019, Dover's Development Advisory Committee ("DAC") held a meeting and considered Bluesky's application to construct a new 5,194 square foot car wash at the Site. Dover's DAC in turn issued a written report to the DPC recommending approval. In it, the DAC first reviewed and commented on the City of Dover ordinance prohibiting certain uses in the Zone.[1] That ordinance, adopted as required by 7 *Del. C.* § 6082, recognizes critical feeder areas ("recharge areas") that supply sources of drinking water to the City.[2]

The Site falls partially inside and partially outside of the Zone. The relevant provision of Dover's Code prohibits uses within the Zone as follows:

[u]ses prohibited:
a) [a]utomobile body/repair shop, motor vehicle, boat or farm equipment service:
b) [g]as stations and motor vehicle service stations.[3]

The DAC report relayed the Planning Director's opinion that the proposed car wash would not involve motor vehicle service. Accordingly, the DAC advised the DPC that the ordinance does not prohibit the operation of a car wash at the Site.

In its application, Bluesky also requested a waiver of a separate Code requirement that there be a thirty-foot buffer along the Site's U.S. Route 13 frontage. The DAC report also discussed that request. City Code refers to this as an arterial street buffer.[4] City Zoning Ordinance, Article 5, Section 7.33, provides that an applicant may request a waiver of this requirement by approving:

---

[1] City of Dover Code Art. 3 § 29.51 (prohibiting various uses throughout the source water protection overlay zone, including: automobile body/repair shops, motor vehicle, boat or farm equipment service; gas stations and motor vehicle service stations).
[2] *Id.* at § 29.7.
[3] *Id.* at § 29.51(a)–(b).
[4] *Id.* at Art. 5 § 7.3 ("Where nonresidential zoned property fronts on a principal arterial street, as designated by the comprehensive plan, a landscape buffer shall be required in addition to normal landscaping of the street right-of-way. . . Arterial street buffers shall be a minimum of 30 feet in depth, measured from the right-of-way line of the arterial street.").

3

[a] buffer less than 30 feet in depth. In approving a lesser amount of buffering, the Planning Commission shall consider the following factors:

a) Whether there are specific constraints related to existing lot size, lot configuration or the orientation of existing buildings on adjoining properties that would severely limit the development potential of the property if a deep buffer was required.

b) Whether a deep or shallow buffer would cause the property to be out of character with the surrounding built environment.

c) Whether there is significant landscape area within the right-of-way of the arterial street itself that can contribute to the buffer, and whether future road improvement activities are likely to reduce the depth of this area.

d) Whether the landscape design and planting plan for the buffer achieve the standards of subsection 7.32 - *Standards for Arterial Street Buffer Landscaping*.[5]

After referencing the four required factors, Staff recommended (in the DAC report) that the DPC approve a partial waiver of the arterial street buffer, reducing it from thirty feet to ten feet. Staff recommended that the DPC grant the waiver because (1) the Site plan already called for an additional fourteen feet of dedicated right-of-way, (2) adjacent properties did not have thirty-foot buffers (in fact, one recently approved adjacent property had no buffer); and (3) the plan, as submitted, provided for an adequate buffer for aesthetic purposes.

The DPC first considered Bluesky's application at its meeting of February 19, 2019. There, the DPC received and considered the DAC's report. Bluesky commented at the meeting that (1) only a small portion of the building intended to house car dryers would cross into the Zone, (2) the building was a prototype and was the smallest one available, and (3) a dedicated right-of-way along U.S. Route 13 reduced the available area for a buffer.

---

[5] *Id.* at § 7.33.

Race Track, through counsel, also addressed the DPC during the public hearing portion of the meeting. There, Race Track argued that a car wash is a motor vehicle service station and is therefore a prohibited use. Further, it argued that the DPC must evaluate all four factors listed above before waiving the thirty-foot buffer requirement. Race Track argued that had the DPC considered the four factors, it could not have granted the waiver.

After the close of the public hearing, a commissioner asked City planning staff for a legal opinion regarding whether a car wash falls within the definition of a motor vehicle service station. The DPC then tabled the application to seek a legal opinion on that issue.

The DPC next considered the matter at its March 18, 2019 meeting. Between the two DPC meetings, the record expanded. Namely, on March 8, 2019, Dover's Planning Office submitted a memorandum to the DPC. The memorandum relayed both the Planning Director and the City Solicitor's opinions that the proposed use would not include motor vehicle service. Furthermore, Staff provided further analysis and recommendations regarding the four factors for the buffer waiver. In doing so, it recommended that the Commission also approve the arterial buffer waiver.

Shortly before the March DPC meeting, Race Track submitted a letter expanding its arguments against the application. Namely, it provided additional support for its interpretation of the term "motor vehicle service station" and why a car wash should fit within that definition. It also argued that the application did not meet the four factors for approval of a waiver of the thirty-foot buffer requirement. Lastly, it argued that the City of Dover Code improperly delegated waiver ability to the Planning Commission. In doing so, it argued that the Delaware Code required the City's Board of Adjustment to consider the request as a variance.

5

Shortly thereafter, Bluesky countered with a letter asserting that Race Track had no standing to contest the application. In its letter, Bluesky also countered Race Track's substantive arguments.

At the March 18, 2019, DPC meeting, Bluesky offered additional information supporting its application. The DPC entertained no further public comment. Thereafter, the DPC orally approved the application, and when doing so, it waived the full arterial buffer requirement. The commissioners recited several reasons for approval including: the comments made in support of the application; Staff's recommendations; the City Solicitor's legal opinion; and the City Planner's recommendations. On April 15, 2019, the DPC issued its written approval.

Thereafter, Race Track filed a petition for writ of *certiorari*. Bluesky then filed a motion to dismiss, pursuant to Rule 12(b)(6), alleging lack of standing. The Court denied the motion because Race Track's petition adequately alleged standing. When doing so, the Court confined its decision to the allegations in the petition.

Bluesky now renews its request to dismiss the petition based upon a lack of standing. In response, Race Track cites no evidence from the underlying DPC record that supports its claimed standing. Race Track, however, now offers several documents that it alleges do. First, it offers a 2007 report to the Governor and the General Assembly entitled "Delaware Source Water Assessment and Protection Program." It also offers a Delaware Geological Survey's 2018 Report regarding the "Results of Groundwater Flow Simulation, in the East Dover, Area," and a one page information sheet referencing groundwater studies. Finally, it provides a copy of its City of Dover March water bill, and a copy of Dover's 2008 Comprehensive Plan. Race Track offers no affidavits in support of its standing to challenge this DPC action.

Now, the parties have fully briefed the issues. As opposed to the prior motion to dismiss, the Court may now properly review the record below and consider

recently submitted information, if appropriate, in assessing standing. Only if the Court finds that Race Track possessed standing to challenge the decision will a review of the substantive issues addressed by the parties be appropriate.

## II.    Standing

The majority of the parties' briefing addressed their standing arguments. At the threshold, the Court must define the scope of the record available to assess standing. When doing so, the Court recognizes that determining standing in the context of a petition for a writ of *certiorari* challenging a DPC decision generates a tension. On the one hand, when evaluating the DPC's actions, the Court must confine its decision to the record below—even to a significantly greater degree than if this were an administrative appeal. On the other hand, Race Track had no ability or obligation in the proceedings below to demonstrate standing when offering public comment. Because standing is a requirement for *this Court* to review the petition, the Court will consider the supplemental materials offered by Race Track. After considering those materials, however, Race Track has not demonstrated standing to seek redress from the DPC's approval decision.

### A. Standards for Standing and for *Certiorari*

A party seeking to invoke the Court's jurisdiction must establish standing.[6] Standing is a threshold question because the Court must ensure that the matter is a "case or controversy" that is appropriate to address as a judicial matter.[7] While this Court is not constrained by the requirements of Article III of the United States Constitution as are the federal courts, Delaware courts nevertheless apply the same

---

[6] *Dover Historical Soc. v. City of Dover Planning Comm'n*, 838 A.2d 1103, 1110 (Del. 2003).
[7] *Id.*

7

standard by analogy. They do so "as a matter of self-restraint to avoid rendering of advisory opinions at the behest of parties who are 'mere intermeddlers.'"[8]

The three requirements for standing applicable to this petition include that: (1) the plaintiff suffered an injury-in-fact to a legally protected interest that is (a) concrete and particularized and (b) actual or imminent; (2) there is a causal connection between the injury and the conduct complained of; and (3) there is a likelihood of redressability.[9] In order to achieve standing, a plaintiff must have an interest distinguishable from the general public.[10] For purpose of alleging environmental injury-in-fact, "the party claiming standing must show that the alleged environmental injury will actually affect it."[11] Likewise, to assert injury-in-fact for purposes of aesthetics, the party must demonstrate how the challenged action affects it.

This matter is a petition for writ of *certiorari*. As such, it is not the functional equivalent of an appeal.[12] Regarding such a petition, the Court "may not weigh evidence or review the lower tribunal's factual findings."[13] The purpose of *certiorari* is "to correct errors of law, to review proceedings not conducted according to law, and to restrain an excess of jurisdiction."[14]

## B. Considering Matters Outside the Record Below

Race Track did not address its claim of standing before the DPC; nor should it have. It participated pursuant to a public comment session at one of the two

---

[8] *Id.* at 1111.
[9] *Id.* at 1110 (citations omitted).
[10] *Oceanport Indus., Inc. v. Wilmington Stevedores, Inc.,* 636 A.2d 892, 900 (Del.1994).
[11] *Oceanport*, 636 A.2d at 905 (citing *Lujan v. National Wildlife Federation,* 497 U.S. 871, 886 (1990)).
[12] *Maddrey v. Justice of the Peace Court 13*, 956 A.2d 1204, 1212 (Del. 2008).
[13] *Id.*
[14] *Dover Historical Soc.*, 838 A.2d at 1106.

meetings where the DPC discussed the application. Race Track now offers environmental reports and studies, a City of Dover water bill, and Dover's 2008 Comprehensive Plan to demonstrate its standing.

Bluesky's arguments regarding standing are three-fold. First, Bluesky argues that there is nothing in the record below that shows that Race Track suffered an injury-in-fact. Bluesky emphasizes this Court's limited review pursuant to a writ of *certiorari* and that such review is necessarily confined to the record. Given that there is no evidence in the record below supporting Race Track's standing, Bluesky argues that Race Track cannot demonstrate it. Second and alternatively, Bluesky argues the Court cannot consider the supplemental materials Race Track offers because they are not admissible pursuant to the Delaware Rules of Evidence. Third, Bluesky argues that even if the Court considers Race Track's supplemental information, Race Track has not demonstrated an injury-in-fact. As a corollary to this argument, Bluesky emphasizes Race Tracks economic interest as a competitor. It emphasizes that economic interest does not provide standing to challenge land use decisions when the alleged harm is environmental or aesthetic.

Race Track counters that for purposes of demonstrating standing before this Court, it should not be bound by the record below. It emphasizes that it did not have the opportunity to demonstrate its standing before the DPC. In seeking to supplement the record, it argues that the Court should take judicial notice of the reports and studies it offers. Race Track also emphasizes the well-recognized principle that standing is not defeated solely because a petitioner has an economic motivation to challenge a decision as long as standing independently exists on other grounds.

Here, Race Track must be permitted to attempt to demonstrate its standing by supplementing the record. Race Track, as a business operator within City limits, participated at the first DPC meeting during its public comment session. Thereafter,

Bluesky challenged Race Track's standing for the first time by letter. The DPC permitted no further public comment, which was within its purview. Nevertheless, Race Track had no opportunity to respond to the issue. Below, the DPC process required no DPC finding other than that Race Track qualified as a member of the public. In contrast, the requirements for standing in this Court involve significantly more.

Standing is generally determined on the trial court record.[15] It follows that on appeal, an appellate court should generally look solely to the record below regarding standing because the trial court must make the finding in the first instance. In such cases, the party seeking standing develops a record below. Setting aside for the moment that this matter involves *certiorari*, when presiding over challenges of some administrative decisions, a court must take a modified approach when assessing standing. Because Delaware's test for standing parallels the requirements for Article III standing, federal case law offers useful guidance.

In *Sierra Club v. E.P.A.*,[16] the District of Columbia Court of Appeals explained the differences between determining whether (1) a party had standing before a trial court, versus (2) determining whether a party has standing to challenge a decision pursuant to an administrative appeal. There, the court sat as the appeals body for an administrative decision of the Environmental Protection Agency. It recognized that in some fully contested administrative proceedings, there could be a motive and opportunity to develop a record regarding standing at the administrative level.[17] Nevertheless, it also recognized that in the frequent case where a petitioner challenging an administrative decision had:

> no need to establish its standing to participate in the proceedings before the agency [,w]hen the petitioner later seeks judicial review, the . . .

---

[15] *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).
[16] 292 F.3d 895 (D.C. 2002)
[17] *Id.* at 899.

requirement that it have standing kicks in and that requirement is the same, of course, as it would be if such review were conducted in the first instance by the district court.[18]

In this regard, the Court of Appeals held that it would be inappropriate to impose an after-the-fact requirement for a petitioner to have fully developed a record where it was (1) unnecessary, and (2) often impossible to do so below.[19]  In recognition of these realities, the requirement to establish standing "kicks in" when the reviewing court must first evaluate it.[20]  This approach is consistent with requiring a petitioner to substantiate its standing "with the manner and degree of evidence required at the successive stages of the litigation."[21]

Here, Race Track petitions for a writ of *certiorari* as opposed to appealing a case decision or challenging a promulgated regulation.  The Court's standard of review is more limited in a petition for writ of *certiorari* when compared to the already limited review applicable in a typical administrative appeal.[22]  Nevertheless, for the threshold issue of standing, the same logic applies. Making a decision based on supplemental information *when it first matters* does not require the Court to exceed its jurisdiction on *certiorari*.  If review is appropriate because there is standing, all the limitations applicable to a review pursuant to this extraordinary writ still apply.  Standing, however, must be separately and independently considered by the Superior Court at this stage of the proceedings because the DPC did not, and need not, have considered it for public comment purposes.  As the Ninth Circuit

---

[18] *Id.*
[19] *Id.*
[20] *Id.*
[21] *Id.* (citing *Defenders of Wildlife*, 504 U.S. at 551).
[22] *See Maddrey*, 956 A.2d at 1213 (explaining that a court's scope of review on *certiorari* is more limited than that of an appellate court's because the review is on the record, does not weigh evidence of the lower court, and is not on the merits, but rather is limited to issues of errors of law, jurisdiction, and illegal procedure).

Court of Appeals similarly held in the administrative appellate context in *Northwest Environmental Defense Center v. Bonneville Power*,[23] a court should:

> [c]onsider . . . affidavits not in order to supplement the administrative record on the merits, but rather to determine whether petitioners can satisfy a prerequisite to this court's jurisdiction.[24]

Having determined that Race Track may supplement the record regarding standing, the Court next turns to the issue of what type of information Race Track may supplement it with. Both parties centered their arguments on the assumption that the Delaware Rules of Evidence control this issue. Namely, they focused on whether rules of evidence involving judicial notice permit the Court to consider Race Track's reports and studies.

Resolving whether DRE 201(a)–(b) or DRE 202(d)(1)(B) would control the admissibility of the documents as if this were a trial is unnecessary. The Court is not limited to considering evidence that would be admissible at trial when evaluating if Race Track has standing. This follows directly from relevant case law that recognizes the propriety of filing affidavits in support of supplementing the record regarding standing.[25] Affidavits are generally inadmissible pursuant to the Delaware Rules of Evidence. They are nevertheless a permitted medium to use in favor of, or in opposition to, summary judgment pursuant to Superior Court Civil Rule 56.[26] The

---

[23] 117 F.3d 1520 (9th Cir. 1997).

[24] *Id.* at 1528.

[25] *See Oceanport*, 636 A.2d at 903, n.13, 905 (discussing the lack of affidavits supporting WFS's position).

[26] *See* Super. Ct. Civ. R. 56(a)–(b) (permitting both claimants and defending parties to move for summary judgment "with or without supporting affidavits"); *see also id.* at 56(e) ("Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence and shall show affirmatively that the affiant is competent to testify to the matters stated therein.").

case at hand does not involve a summary judgment motion.[27]  It involves this Court's *decision on the merits* regarding a petition for an extraordinary writ and there is no special rule addressing the admissibility of affidavits in this context.   Accordingly, the absence of any rule authorizing the use of affidavits coupled with their universal acceptance for this purpose illustrates that strict rules of evidence do not apply.[28]  Likewise, there is no basis to treat public reports and studies any differently regarding this limited issue.  In a manner such as this, the Court has no mechanism to hear evidence.  Accordingly, both parties may offer supplemental information relevant to standing and argue its importance.  Such an approach is consistent with the United States Supreme Court's recognition that "the burden of production for standing is correlative to the burden of production for the substantive elements of the litigant's case at the successive stages of litigation."[29]

One of Bluesky's arguments further illustrate the inappropriateness of requiring a party seeking standing to do so pursuant to strict rules of evidence.  Namely, Bluesky argues that this Court should not consider Race Track's submissions because they were not presented to the DPC.  However, hearsay, environmental studies, and other submissions not otherwise admissible pursuant to the Delaware Rules of Evidence, could have been considered by the DPC.  It would be inconsistent to require Race Track to meet strict rules of evidence in this Court for this prudential matter where (1) there is no evidentiary hearing available, and (2) where it need not have done so before the DPC in the first instance.  Certainly any

---

[27] *C.f. Dover Historical Society*, 838 A.2d at 1110 (contrasting the Rule 12(b)(6) standard in the context of a petition for writ of *certiorari* with the standard for summary judgment only for the purpose of focusing on  Rule 12(b)(6)'s more relaxed standard).
[28] *See Oceanport*, 636 A.2d at 903, n.13, 905 (recognizing the appropriateness of accepting affidavits for this purpose); *see also Sierra Club*, 292 F.3d at 900 (finding that standing should be established "at the first appropriate point in the review proceeding" through the submission of affidavits or other evidence), *Northwest*, 117 F.3d at 1527–28 (considering supplemental affidavits to determine whether petitioners had standing).
[29] *Sierra Club*, 292 F.3d at 900 (citing *Defenders of Wildlife,* 504 U.S. at 561).

submissions must contain sufficient indicia of reliability for the Court to comfortably rely upon the item. The material that Race Track submits meets that requirement.

## C. Application of the Standard to Race Track

Here, Race Track's submissions, however, do not demonstrate that it suffered an injury-in-fact. Accordingly, the Court may not consider the substance of Race Track's petition.

In arguing that it suffered a concrete and particularized injury that was actual or imminent, Race Track advances two alleged injuries caused by DPC's action. First, with regard to placing the car wash in the Zone, Race Track alleges environmental harm to its water supply. Second, it alleges aesthetic harm based upon the partial waiver of the arterial buffer requirement.

To substantiate standing, the "plaintiff's interest in the controversy must be distinguishable from the interest shared by other members of a class or the public in general."[30] Merely focusing on a law (or ordinance) that creates a duty to the public in general does not generate a privately enforceable right.[31] In a zoning case for instance, a "public interest in lawfulness" is insufficient.[32] Furthermore, in the context of alleged harm based upon environmental injury, the party alleging standing must show that "the environmental injury will actually affect it."[33] Likewise, there is no significant distinction in the context of alleged harm to aesthetic enjoyment

---

[30] *Stuart Kingston, Inc. v. Robinson*, 596 A.2d 1378, 1382 (Del. 1991).

[31] *Oceanport*, 636 A.2d at 899.

[32] *Riverfront Hotel LLC v. Bd. of Adjustment of City of Wilmington*, 2019 WL 3884031, at *2 (Del. July 11, 2019) (where the plaintiff's interest was "chiefly the general public interest in what it perceive[d] to be the proper application of the applicable zoning law").

[33] *Id.* at 905 (citing *Lujan*, 497 U.S. at 872, 886).

because one can also suffer an injury to that type of interest.[34]  The injury to either, though, must not be conjectural or hypothetical.[35]

Bluesky places significant emphasis on the fact that Race Track is an economic competitor.  It alleges competition to be the true motivation for Race Track's challenge.  While Bluesky may be correct, claimed standing is not defeated where there are combined economic and environmental injuries so long as there is a valid environmental claim.[36]  In making a decision regarding standing, the Court is not free "'to weigh or proportion' conflicting monetary and environmental interests."[37]  Only when a company is solely motivated to protect its own pecuniary interests, and the environmental aspect is so infinitesimal that it ought to be disregarded completely, should the Court not find standing on an environmental basis.[38]

Within the documents it submits, Race Track focuses on general statements in one study regarding the importance of recharge areas to ground water.  The 2017 Delaware Source Water Assessment and Protection Program report describes groundwater recharge as the "downward movement of water from the surface through the soil profile to the water table aquifer."[39]  It also defines an "excellent recharge area," such as the Zone, as a surface area where precipitation infiltrates the land surfaces to the aquifer at a more rapid rate than in other areas.[40]

In conjunction with these general observations, Race Track also relies heavily on a groundwater flow simulation report that provides the following, in part:

---

[34] *Dover Historical Soc.*, 838 A.2d at 1112.
[35] *Oceanport*, 636 A.2d at 904.
[36] *Id.* at 905.
[37] *Id.* (citation omitted).
[38] *Id.* (citation omitted).
[39] Petitioner's Op. Br., Ex. B, at 10.
[40] *Id.*

15

[f]low mass-budget analysis shows that, of the 75,800 $m^3$/day of groundwater recharge, approximately 64 percent discharges to wetlands/marshes, Delaware Bay, and other major rivers: 10 percent is pumped from the unconfined aquifer; 17 percent infiltrates to the underlying aquifers through the Frederica outcrop area, and 8 percent flows through the underlying confining layer to the deep confined aquifer (Figure 6).[41]

Figure 6 offers no further information.[42] From these references, Race Track extrapolates without further support that "35% of the groundwater recharge is either pumped directly by wells or otherwise enters the aquifers supplying the Dover water supply."[43] As an even further extrapolation from that premise, Race Track claims that its drinking water will therefore be harmed by DPC's decision.

These documents do not alone demonstrate standing for two reasons. First, the Court is not equipped to make a finding of fact regarding a concrete and particularized injury to Race Track based upon these provisions. On this record, the Court can draw no conclusion in the absence of an affidavit, an expert report, or at least a provision in a study or report that demonstrates with more particularity that the DPC's approval of this car wash will actually harm, or threaten imminent harm to Race Track's drinking water. There is insufficient information in what Race Track cites to connect the proposed dots.

Second, Race Track offers no affidavits or other support regarding its use of water for drinking purposes. Race Track operates a commercial property; it is not a household where persons would be expected to cook with the water or even necessarily drink it. Furthermore, there is nothing in the record supporting its employees' use of City-provided drinking water. Likewise, there is nothing in the combined record, via affidavit or otherwise, demonstrating that Race Track even has

---

[41] Petitioner's Op. Br., Ex. C, at 7.
[42] *See id.* at 8, Fig. 6.
[43] Petitioner's Rep. Br. at 3.

16

employees at its site.  While employees may need drinking water, on this record, there is no indication that Race Track operates a manned, as opposed to an automated, car wash that requires on-site employees.  As to its operations, Race Track does not demonstrate why a car wash would need to use potable water to wash cars.  Presumably, many do not.   In other words, the record is completely silent as to Race Track's operations and its actual reliance on clean water.

A party asserting standing is not necessarily required to support his or her claim with affidavits.  However, when alleging individual, concrete, particularized, and actual or imminent harm, it is difficult in the context of this case to picture a way to do so without affidavit support.  Merely (1) alleging negative environmental impact on an existing car wash located a mile away because of (2) the approval of a new car wash partially in the Zone does not intuitively demonstrate that Race Track suffered concrete and particularized harm.  On this record, the Court is not free to presume that Race Track will suffer an injury-in-fact.

Finally, Race Track does not articulate, other than in a conclusory manner, that a partial waiver of the arterial buffer harms it.  Race Track's location alone, one mile from the proposed Bluesky car wash, does not provide even a deferential inference that the Site is visible from Race Track's location.  Race Track's frontage along U.S. Route 13 also does not support an injury-in-fact.   Race Track offers no supplemental information to support its standing to challenge the waiver.  Nor does evidence of record in the DPC proceedings demonstrate a concrete and particularized harm to Race Track's aesthetic interests.

In evaluating Race Track's claimed standing, both parties argue different interpretations of the Delaware Supreme Court's decision in *Oceanport Industries, Inc. v. Wilmington Stevedores, Inc.*[44]  That decision supports the Court's finding of

---

[44] *Oceanport Indus., Inc. v. Wilmington Stevedores, Inc.,* 636 A.2d 892 (Del.1994).

17

no standing in this case. Namely, the Court in *Oceanport* recognized that the "mere allegation of a sincere interest in an environmental problem is not sufficient to confer standing."[45] There, the Court held that the mere interest in water quality, surface water run-off, and the effects of dredging on water quality in the Delaware River were insufficient to confer standing on the challenging party.[46] The provisions of the Coastal Zone Act,[47] in the absence of a demonstrated injury-in-fact, did not change that.[48] Likewise, the Delaware Code provisions Race Track cites that require municipalities to adopt overlay zones do not confer standing upon all citizens absent an injury-in-fact.[49] The issue for standing purposes is whether the petitioner "would be directly affected" by the action.[50] As in the case at hand, the petitioner in *Oceanport* offered no affidavits or sufficient documents to detail its standing claim.[51] A petitioner must step forward with more than a bald assertion of fact to demonstrate its standing.[52]

---

[45] *Id.* at 905.

[46] *Id.* at 904.

[47] 7 *Del. C.* § 7001–15.

[48] *Oceanport*, 636 A.2d at 904–05.

[49] Race Track argues that the following language of 7 *Del. C.* § 6082 places it within the zone of interest necessary to demonstrate its injury-in-fact:

> [t]he . . . municipalities . . . shall adopt . . . overlay amps delineating, as critical areas, source water assessment, wellhead protection and excellent ground-water recharge potential areas [and] regulations governing the use of land within those critical areas designed to protect those critical activities from activities and substances that may harm water quality . . ..

It then argues that the Dover ordinance adopted pursuant to that statute prohibiting motor vehicle service stations demonstrates an injury-in-fact. For the reasons discussed, Race Track does not demonstrate an injury-in-fact on that basis, absent record support.

[50] *Oceanport*, 636 A.2d at 903, n. 13.

[51] *Id.* at 904–05.

[52] *Id.* at 905.

18

### III. Conclusion

Because Race Track has not demonstrate that it has standing, its petition for a writ of *certiorari* does not involve a case or controversy. Accordingly, the Court cannot review the merits of its petition. Its petition for writ of *certiorari* must be **DISMISSED** with prejudice at this stage of the proceedings.

**IT IS SO ORDERED.**


/s/Jeffrey J Clark
Judge

19