**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

SELENA E. MOLINA
MASTER IN CHANCERY

Leonard L. Williams Justice Center
500 N. King Street, Suite 11400
Wilmington, Delaware 19801-3734

Final Report:  August 31, 2021
Date Submitted:  May 24, 2021

Richard E. Berl, Jr., Esquire
Hudson, Jones, Jaywork & Fisher, LLC
Dartmouth Business Center
34382 Carpenter's Way, Suite 3
Lewes, Delaware 19958

Arthur D. Kuhl, Esquire
Reger Rizzo & Darnall LLP
Brandywine Plaza West
1521 Concord Pike, Suite 305
Wilmington, DE 19803

Re:  *Little River Landing LLC v. Allstate Vehicle and Prop. Ins. Co.*,
C.A. No. 2021-0012-SEM

Dear Counsel:

The plaintiff seeks reformation of an insurance policy and related relief.  The plaintiff argues it contracted with an insurance company to insure the plaintiff against damage to certain real property but, after there was a fire at the property, the insurer denied the plaintiff's claim for damages.  The plaintiff then learned it was not the named insured on the written policy.  The plaintiff argues it was left off the written policy due to a mutual mistake and, as such, seeks reformation of the policy.  The insurer moved to dismiss, arguing that the plaintiff failed to state a reasonably conceivable claim for reformation.  For the following reasons, I recommend that the motion to dismiss be denied.  This is my final report.

## I.  Background[1]

Little River Landing LLC ("Little River") is a Delaware limited liability company located in Frederica, Delaware whose sole member is Love A. Mbuntcha (the "Member").[2]  In April of 2019, Little River purchased real property located at 108 Omni Road in Dover, Delaware (the "Property").[3]  Intending to resell the Property, Little River obtained "builders risk insurance" from American Zurich Insurance Company and undertook and completed certain renovations on the Property.[4]  The Property was then listed for sale with Olson Realty.[5]

Thereafter, Little River decided to replace the "builders risk insurance" policy with a "more traditional hazard insurance policy."[6]  In October or November of 2019, the Member's husband was contacted by Helena Haileselassie (the "Agent"), a representative of Allstate Vehicle and Property Insurance Company ("Allstate").[7] After that initial call, the Agent spoke with the Member and discussed the benefits

---

[1] Unless otherwise noted, the facts recited herein are taken from the Complaint.  Docket Item ("D.I.") 1.

[2] D.I. 1 ¶ 1.

[3] *Id.* ¶ 3.

[4] *Id.* ¶ 3.

[5] *Id.* ¶ 4.

[6] *Id.* ¶ 5.

[7] *Id.* ¶¶ 5-6.

of bundling coverage of the Property with certain automobiles, the Member's personal residence, and another investment property.[8] During the discussion, the Agent viewed photographs of the Property on the Olson Realty website and the Member explained to the Agent that the Property had been purchased for resale and was currently vacant.[9] Thereafter, Little River believes Allstate sent a representative to personally inspect the Property and the investment property.[10]

After the inspection, the Member received a letter from Allstate raising concerns about insuring the investment property.[11] The Member spoke with Michael Roache, who represented himself as the Agent's boss and owner of the insurance agency, and the parties ultimately agreed to remove the automobiles and investment property from the bundle.[12] Allstate agreed to insure the Property and the Member's personal residence in exchange for a specified premium.[13] Neither Mr. Roache nor the Agent asked Little River or the Member to complete an application or sign any

---

[8] *Id.* ¶ 6.

[9] *Id.* ¶ 7.

[10] *Id.* ¶ 8.

[11] *Id.* ¶ 9.

[12] *See id.* ¶ 9.

[13] *Id.* ¶ 10.

documentation related to the policy.[14]  A written policy was, nonetheless, issued effective November 5, 2019.[15]  Unbeknownst to Little River, the written policy reflects the named insured and owner of the Property as the Member and the Member's husband, rather than Little River.[16]

On or about February 15, 2020, a fire of undetermined origin occurred at the Property, damaging the renovated improvement.[17]  The Member submitted a claim to Allstate, which inspected the Property and denied the claim "[s]hortly thereafter[.]"[18]  On July 21, 2020, the Delaware Department of Insurance ("DOI") confirmed "Allstate had denied the claim because the [P]roperty was vacant at the time of the fire."[19]  The DOI representative also informed the Member that the Agent was not "a properly licensed agent for Allstate."[20]

---

[14] *Id.* ¶ 11.

[15] *Id.* ¶ 12.  Thereafter, monthly premium payments of $197.89 were paid through automatic deductions from the Member's bank account.  *Id.*

[16] *Id.* ¶ 13.

[17] *Id.* ¶ 15.  Little River alleges total damages of $241,900.00.  *Id.* ¶ 19.  This reflects the costs for demolition and reconstruction of the improvement on the Property.  *Id.*

[18] *Id.* ¶ 16.

[19] *Id.* ¶ 17.

[20] *Id.*

Little River initially sued Allstate in the Delaware Superior Court.[21] After Allstate moved to dismiss, Little River requested leave to transfer the matter to this Court to pursue reformation, a purely equitable claim.[22] The Superior Court granted the transfer without ruling on Allstate's motion to dismiss.[23]

On January 7, 2021, Little River filed a Verified Complaint in this Court pleading six claims: (1) reformation, (2) declaratory judgment, (3) breach of contract, (4) promissory estoppel, (5) fraud, and (6) breach of the implied covenant of good faith and fair dealing (the "Complaint").[24] Allstate moved to dismiss the Complaint under Court of Chancery Rule 12(b)(6), arguing that Little River failed to state a cognizable claim for reformation (the "Motion").[25] The Motion was fully briefed and oral argument was held on May 24, 2021.[26]

---

[21] *Little River Landing LLC v. Allstate Insurance*, C.A. No. S20C-09-018 MHC (Del. Super.) ("Superior Court Action"). I find I may take judicial notice of the Superior Court Action. *See Aequitas Sols., Inc. v. Anderson*, 2012 WL 2903324, at \*3 n.17 (Del. Ch. Jun. 25, 2012) (taking judicial notice of a pleading filed in a related action).

[22] Superior Court Action D.I. 7.

[23] Superior Court Action D.I. 9, 11.

[24] D.I. 1.

[25] D.I. 4.

[26] *See* D.I. 8, 10, 12.

## II.    Analysis

Allstate seeks dismissal under Court of Chancery Rule 12(b)(6) for failure to state a claim.  Allstate contends (1) Little River is not insured under the policy and thus has no standing to seek reformation; (2) because the named insured, the Member, does not have an insurable interest, the policy is unenforceable as a matter of law and not subject to reformation; and (3) Little River is not seeking merely reformation but rather a new commercial policy naming a new corporate owner.[27]

The standard of review is settled:

> (i) all well-pleaded factual allegations are accepted as true; (ii) even vague allegations are "well-pleaded" if they give the opposing party notice of the claim; (iii) the Court must draw all reasonable inferences in favor of the non-moving party; and ([iv]) dismissal is inappropriate unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof.[28]

Allstate's primary argument for dismissal is standing.  Little River bears the burden of demonstrating it has standing to bring its claims.[29]  Delaware courts

---

[27] D.I. 5.

[28] *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896-97 (Del. 2002) (citations and quotation marks omitted).  "[W]here, as here, the issue of standing is so closely related to the merits, a motion to dismiss based on lack of standing is properly considered under Rule 12(b)(6) rather than Rule 12(b)(1)." *Appriva S'holder Litig. Co., LLC v. EV3, Inc.*, 937 A.2d 1275, 1285–86 (Del. 2007).

[29] *See Dover Hist. Soc. v. City of Dover Planning Com'n*, 838 A.2d 1103, 1109 (Del. 2003) ("The party invoking the jurisdiction of a court bears the burden of establishing the elements of standing.").

generally follow the federal standing analysis requiring (1) an injury in fact, (2) that is causally connected to the challenge action(s), and (3) is redressable by a favorable decision.[30] Standing may also be applied "as a matter of self-restraint to avoid the rendering of advisory opinions at the behest of parties who are 'mere intermeddlers.'"[31] "At the pleading stage, general allegations of injury are sufficient to withstand a motion to dismiss because it is presume[d] that general allegations embrace those specific facts that are necessary to support the claim."[32]

Allstate argues that Little River is a mere intermeddler due to the basic principle that "[n]on-parties to a contract—even third party beneficiaries—lack standing to seek reformation."[33] But Little River alleges that it did contract with Allstate, through the Member as its agent, and Little River is not named in the policy due to a mutual mistake. Under the well-pled facts, Little River has pled a cognizable claim that it is a party to the policy, not a third-party beneficiary or mere intermeddler.[34]

---

[30] *Burkhart v. Genworth Fin., Inc.*, 250 A.3d 842, 852 (Del. Ch. 2020).

[31] *Stuart Kingston, Inc. v. Robinson*, 596 A.2d 1378, 1382 (Del. 1991).

[32] *Burkhart v. Genworth Fin., Inc.*, 250 A.3d at 852 (citations and quotation marks omitted) (alteration in original).

[33] *In re Pantalone*, 2011 WL 6357794, at *2 (Del. Ch. Dec. 9, 2011) (citations omitted).

[34] *Cf. In re Pantalone*, 2011 WL 6357794, at *1-*2 (finding the petitioner did not have standing to seek reformation of a mortgage when he was "not a party to the mortgage or the loan it secured" and he "has no interest in the underlying property"); *Gonzalez-*

Turning to the three factors in the federal standing analysis, I find Little River has adequately pled an injury to the Property, which it owns, and that injury is connected to the challenged action—Allstate denying coverage. The issue that gives me pause is whether the injury is redressable. Allstate argues it is not because the underlying policy is unenforceable under 18 *Del. C.* § 2706, which provides: "No contract of insurance of property . . . shall be enforceable as to the insurance except for the benefit of persons having an insurable interest in the things insured as at the time of the loss."[35] Per Allstate, because the named insured on the policy (the Member) does not have an insurable interest, the policy is not enforceable and it cannot be reformed. I disagree that this presents a basis on which to dismiss.

Little River has plead a cognizable claim that both parties intended Little River to be the named insured under the policy and it was through a mutual mistake that Little River was not so named. If Little River succeeds on this claim, the policy

---

*Rodriquez v. Soto*, 2021 WL 1030179, at *5-*6 (Del. Super. Mar. 15, 2021) (finding a former employee did not have standing to reform a contract to which he "was not the contracting party" and for which he "made no decisions regarding the coverage he now wishes to reform"); *Harner v. Westfield Ins. Co.*, 2018 WL 6721765, at *3 (Del. Super. Dec. 12, 2018) ("A policy purchased through a corporation or an LLC is the *company's* insurance policy, and the individual conducting the transaction is an agent for the business entity.") (emphasis in original).

[35] 18 *Del. C.* § 2706(a).

could be reformed *nunc pro tunc* to reflect the parties' shared intent at that time of contracting.[36]

Finally, Allstate argues that reformation cannot be used to create "a new contract with new parties."[37] In theory, I agree. Reformation works to cure an error that occurred in memorializing the parties' prior agreement. If the parties did not agree to insure Little River for damage to the Property, reformation cannot create such an obligation. But Little River adequately pled that the parties had a prior understanding and the written policy mistakenly named the Member and the Member's husband, instead of Little River.[38]

---

[36] *See Colvocoresses v. W. S. Wasserman Co.*, 28 A.2d 588, 589 (Del. Ch. 1942) ("The very purpose of reformation by a Court of Equity is to make an erroneous instrument express correctly the real agreement between the parties[.]). In so holding, I recognize the important policy considerations underlying the insurable interest requirement. *See Nationwide Mut. Ins. Co. v. Goerlitz*, 2001 WL 845703, at *4 (Del. Super. Jun. 29, 2001) (explaining the policy behind insurable interest requirements, including "to protect against societal waste and to avoid the danger in allowing persons without an insurable interest to purchase insurance, because those persons might then intentionally destroy lives or property") (citations omitted). But, here, Little River has pled a cognizable claim that Little River was the owner of the Property and the intended insured. If there was such a mutual mistake, reformation may cure. But, if Little River cannot prove this mistake and prior understanding by clear and convincing evidence, the reformation claim would fail on the merits. *Cf. In re TIBCO Software Inc. S'holders Litig.*, 2015 WL 6155894, at *13 (Del. Ch. Oct. 20, 2015).

[37] D.I. 10 p.3.

[38] *See, e.g.*, D.I. 1 ¶¶ 21-23, 29.

Viewing the factual averments in Little River's favor, I find Little River has pled a reasonably conceivable claim for reformation. To prevail on its reformation claim, Little River will ultimately need to demonstrate, through clear and convincing evidence, "the parties came to a specific prior understanding that differed materially from the written agreement."[39] Time—and further fact finding—will tell if the written policy should be reformed; at this stage, Little River's claims should survive.

## III. Conclusion

For the foregoing reasons, I find that Little River has pled a reasonably conceivable claim for reformation. Whether Little River will ultimately succeed remains to be seen. I recommend the Motion be denied. This is my final report in this matter and exceptions may be filed under Court of Chancery Rule 144.

Respectfully,

*/s/ Selena E. Molina*

Master in Chancery

---

[39] *Cerberus Intern., Ltd. v. Apollo Mgmt., L.P.*, 794 A.2d 1141, 1152 (Del. 2002).